SMITH, governor, for use, *vs.* BANKS *et al.*

1. The evidence being sufficient to sustain the verdict under the law as ruled by this court when this case was here before, 60 *Ga.*, 643, the refusal of the court to grant a new trial will not be controlled.
2. Jurors cannot impeach their verdict; much less will it be set aside on the affidavit of the party for whose use the case is proceeding, that some of the jurors told him that it was caused by mistake.

New trial. Jury. Verdict. Before Judge SPEER. Newton Superior Court. September Term, 1879.

Smith, governor, for the use of Lee, brought debt against Banks, who was sheriff of the county of Newton for the years 1871 and 1872, and the securities on his official bond, alleging as a breach, that his deputy had failed to levy two executions against one Berry, which had been transferred to Lee, on certain lands, as he had been directed to do, by which failure the lien was lost, etc. The defendants pleaded the general issue, that if instructions to levy were ever given the deputy sheriff they were immediately revoked, and that the land was not subject to the executions when the instructions were given.

The plaintiff introduced in evidence the bond sued on, two judgments rendered December 23d, 1861, in favor of Carey W. Berry *vs.* Isham H. Berry, the *fi. fas.* based thereon with transfers to Lee, deed from Glass to Isham H. Berry, made October 30th, 1856, conveying certain land, deed from Berry to Bailey made in September, 1862, covering same property, and the record of the September adjourned term, 1876, of Newton superior court, showing verdicts in favor of claimant in his two cases of Lee, transferree, *vs.* Isham H. Berry, defendant in *fi. fa.*, and M. E. Berry, claimant.

Bailey testified to the following facts: Purchased the land in 1862 from Isham H. Berry, in good faith, without notice, and took a deed, which has since been lost. It

was worth in 1871–2, $1,500.00 to $2,000.00. Conversed with Lee frequently from close of war to 1873; he mentioned that he had executions against Berry, but was not going to push them against the land further than to protect himself on what was known as the Glass or Henderson *fi. fa.*

Isham H. Berry testified to his insolvency, and that the land referred to was worth in 1871–2, $2,500.00.

Lee testified to the following facts: About the middle of November, 1871, he placed the two Berry *fi. fas.* in the hands of Charles A. Dorsett, deputy sheriff, with instructions to levy at once upon the land then in possession of Bailey. The executions were handed to Dorsett in the clerk's office in the presence of Lindsey, clerk. Dorsett promised to make the levy. When witness came to town, which was every few days, he would ask Dorsett if he had made the levy. Such instructions were given to him five or six times. About January 1st, 1872, Dorsett told him that the land had been set apart as a homestead, and he would not levy unless witness would make affidavit that the *fi. fas.* were for the purchase money thereof. Replied that he could not make such affidavit, but would give him any kind of a bond he required. Saw him again about the 1st of February, and insisted that he should make the levy. He still refused and requested that witness should go with him to Judge Floyd's office for advice. Went to Floyd's office and while the latter was writing out the advertisement under the Glass *fi. fa.*, witness again asked Dorsett whether he intended to levy the Berry *fi. fas.* He replied that he would not levy unless the affidavit as to purchase money was made. This witness said he could not do. Dorsett then threw the Berry *fi. fas.* on Floyd's table, said he would have nothing more to do with them and started out of the door. Witness picked up the executions, placed them in his pocket, and as he left Floyd's office, abused Dorsett quite severely. A few days thereafter witness saw Banks, the sheriff, and asked

him if he would not levy the executions.   He replied that he had given all business of that nature to Dorsett.   Land was worth in 1871–2 about $2,500.00.   There was then due upon the Glass *fi. fa.* about $1,200.00 or $1,300.00, and upon the Berry *fi. fas.* about $800.00 or $900.00.   The land, if sold, would have paid them all off.   Witness never did acquiesce in the surrender to him of the executions in Floyd's office.

The evidence of Lindsey, the former clerk, was very vague and indefinite.   He remembered that some time in 1871 or 1872, Lee told him that he had discovered that certain *fi. fas.* against Berry were not dormant, and he wanted them levied, or an old levy already made proceeded on.   Some conversation with Dorsett of this import was had in his office and in the sheriff's, but whether reference was had to the Glass *fi. fa.* or the Berry *fi. fas.* he is unable to state.

The defendants introduced the following evidence:

1.  Execution in favor of Glass *vs.* Berry, based on judgment rendered October 1st, 1858, for $2,275.00 principal, and $96.00 interest to date of judgment, with credits thereon to January 5th, 1861, amounting to $1,760.01, and with credit of $32.85 on January 6th, 1874.   On this paper was a transfer to Isaac P. Henderson.

2.  Dorsett testified as follows: Executions were placed in his hands by Lee in 1871.   Ascertained that property had been set apart as homestead, and informed Lee that he would not levy unless affidavit was made that executions were for purchase money thereof.   The next evening Lee asked witness if he had been out to Bailey's.   Replied that he had not; whereupon Lee said he was glad of it, and requested witness to go with him to Judge Floyd's office.   Floyd advised Lee not to levy either *fi. fa.* Witness did not levy any of the *fi. fas.*, but advertised the land under a levy made on one by a former sheriff. Lee asked witness for the other two *fi. fas.*   Turned two over to Lee, retaining the one which had been levied.

Did nothing with the other two because they were taken out of witness' hands. No other request was ever made to levy.

Banks swore that the Berry *fi. fas.* were never in his hands during his term of office as sheriff, and that Lee never came to him because Dorsett, his deputy, refused to levy them; that Lee did place the Glass *fi. fa.* in his hands, and this he turned over to Dorsett with instructions to levy.

Anderson, the successor of Banks as sheriff, testified that he had a conversation with Lee about the Berry *fi. fas.* sometime in 1873 or 1874; that he asked him to look in the sheriff's office to see if he could find them, as he, Lee, had lost or mislaid them; that he said if he could find them he thought he could make his money; that he made search but was unsuccessful.

Bower, being shown following entry on each of the *fi. fas.*: "I know of no property upon which to levy the within *fi. fa.* except property set apart as a homestead, upon which I am forbidden to levy under the homestead law. September 8th, 1869. (Signed) G. M. T. Bower, sheriff," testified as follows: Entries were made at Lee's request. He said he had executions about to go out of date and there was no property subject except Bailey's land, which he did not wish to disturb, but wanted entries made merely to keep them in life. He was afraid to levy and so was witness. Witness wrote out the notice served on him and Lee signed it. Judge Floyd dictated the language of the entries.

The jury found for the defendants. The plaintiff made a motion for a new trial upon the following, among other grounds:

1. Because the verdict was contrary to evidence, law and the principles of justice and equity.

2. Because the verdict was contrary to the charge.

3. Because the verdict of the jury was the result of mistake.

In support of the last ground Lee filed his affidavit to the following effect :

Since the rendition of the verdict, and shortly there-after, two of the jurors, Vandergriff and Hyatt, informed deponent that after the jury went to their room, they decided that the sheriff, Banks, was liable for the failure of his deputy, Dorsett, to levy the Berry *fi. fas.*; that they then proceeded to calculate the amount due on the Glass *fi. fa.* in order to determine the extent of the sheriff's liability ; that they fixed the value of the Bailey land at $2,000.00; that they found the value of the land not more than sufficient to satisfy the amount due on said *fi. fa.*; that Hyatt called the attention of the jury to the fact that Edwards, one of plaintiff's counsel, had referred to a credit of $800.00 on that *fi. fa.*, and he thought it must be there, but the jury could not find it; that Vandergriff objected to the result of the calculation, and said that there certainly must be some mistake as there were more credits than they had found, and that he knew Lee would not have brought the suit if the land had not been more than sufficient to satisfy the Glass *fi. fa.*

The defendants introduced the affidavit of one of the jury, Boggus, who swore that the verdict was based on the testimony of Dorsett as to his having returned the Berry executions to Lee at his request.

The motion was overruled, and plaintiff excepted.

E. F. Edwards; Capers Dickson; Emmett Womack, for plaintiff in error.

Clark & Pace, for defendants.

Jackson, Justice.

This suit was brought on a sheriff's bond against the sheriff of Newton county and his sureties for breach of the bond in failing to levy, when directed to do so, the

Smith, governor, for use, *vs.* Banks *et al.*

executions of plaintiff on the property of the defendant in execution.

When here before, as reported in 60 *Ga.*, 643, the case was sent back for a new trial because the verdict of the jury might have been made on the excuse of the sheriff for not levying because of a homestead claim set up by him, when the debt on which the judgment was founded was contracted prior to the constitution of 1868; and the case was sent back because of error on that point, and also because the sheriff did not prove that there was a homestead legally set apart, the burden being upon him to make that proof. But it was there ruled distinctly that if the order to levy was revoked, and so found to be by the jury, the sheriff would be discharged, and *a fortiori* would his sureties also be discharged. On the last trial, now brought here for review, the testimony was conflicting on that point, the deputy sheriff testifying that it was revoked, and the plaintiff the contrary.

The jury believed the testimony of the deputy sheriff, as they had a legal right to do, and found the evidence to be in favor of the allegation that the order to levy was revoked and the executions taken possession of by the plaintiff. The evidence being sufficient to sustain the verdict, this court will not overrule the court below in refusing to disturb the verdict on the ground that it is against the evidence and against law. No complaint is made of the charge, but the exceptions are that the verdict is against the law and the evidence.

2. The jurors cannot themselves attack their own verdict; much less can the affidavit of the party that some of them told him that the verdict was caused by mistake authorize a new trial.

Judgment affirmed.